RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0346p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DAVID A. HOXIE, M.D.,

                *Petitioner,*

    *v.*

DRUG ENFORCEMENT ADMINISTRATION,
DEPARTMENT OF JUSTICE,

                *Respondent.*

No. 04-4122

On Petition for Review of a Decision from the United States
Department of Justice, Drug Enforcement Administration.
No. 03-01.

Submitted: July 26, 2005

Decided and Filed: August 16, 2005

Before: ROGERS and SUTTON, Circuit Judges; FORESTER, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Kevin R. Conners, VORYS, SATER, SEYMOUR & PEASE LLP, Columbus, Ohio, for Petitioner. Teresa A. Wallbaum, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

    ROGERS, Circuit Judge. David A. Hoxie, M.D. petitions this court for review of the DEA Deputy Administrator's decision to revoke Dr. Hoxie's certificate of registration to prescribe controlled substances. The Deputy Administrator's determination that Dr. Hoxie materially falsified his applications for a certificate of registration is supported by substantial evidence, based on an arrest record indicating that Dr. Hoxie pled nolo contendere to possession of a controlled substance. Further, the Deputy Administrator's determination that Dr. Hoxie committed acts that rendered his continued registration inconsistent with the public interest was also supported by substantial evidence. Dr. Hoxie failed to comply with California controlled substance law, as evidenced by several arrests for controlled substance violations, misled DEA investigators by denying his prior

---

    [*]The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

criminal history, failed to testify at the hearing on his registration, and offered no evidence to explain or rebut the DEA's contentions regarding his registration. Based on the DEA's factual conclusions, the revocation of Dr. Hoxie's certificate of registration based on his actions was not arbitrary, capricious or an abuse of discretion. Therefore, Dr. Hoxie's petition for review is denied.

I.

Dr. Hoxie is a physician practicing at the Waverly Health Clinic near Columbus, Ohio. He holds medical licenses in Virginia and Ohio, and received a DEA certificate of registration in 1995. A physician must possess a DEA certificate of registration to dispense prescription drugs that appear on the DEA's controlled substances schedules. 21 U.S.C. § 823(f) (2000). Dr. Hoxie renewed his certificate of registration in 1998 and in 2001. On the initial registration application and on two renewal applications, Dr. Hoxie answered "no" to the question, "Has the applicant ever been convicted of a crime in connection with controlled substances under state or federal law?" In 2001, the DEA and the Ohio medical board began to investigate whether this was a false statement.

DEA diversion investigators Dwight Cokeley and Dawn Mitchell looked into Dr. Hoxie's background. Their investigation revealed arrest records indicating that Dr. Hoxie had been arrested seven times between 1973 and 1985 in and around Los Angeles, California. The arrest records show that Dr. Hoxie was arrested on a number of misdemeanor charges, including: (1) possession of marijuana on December 15, 1973; (2) possession of a controlled substance on September 19, 1978; (3) driving under the influence of drugs on July 6, 1980; (4) driving under the influence of alcohol and drugs on July 11, 1981; (5) possession of PCP, being under the influence of PCP, and a vehicle code infraction on August 7, 1983; (6) being under the influence of PCP on January 26, 1984; and (7) driving with a suspended license on September 25, 1984. There is no indication of the disposition of these charges, with the exception of the 1983 arrest. An arrest disposition report indicates that Dr. Hoxie entered a plea of "nolo" to two charges, "11550 (b) H&S," an apparent reference to § 11550(b) of the California Health and Safety Code, which prohibits being under the influence of a controlled substance, and "23152(a) VC Traffic Off," what appears to be a traffic offense. This disposition was confirmed by a document from the California probation department requesting notification should Dr. Hoxie be arrested at any time prior to November of 1985.

In March of 2002, Ms. Mitchell and investigator Randy Beck of the Ohio medical board came to Dr. Hoxie's office and interviewed him regarding his certificate of registration applications. During the interview, Dr. Hoxie made a series of denials. He denied ever being arrested, ever being arrested for controlled substance violations, ever having been convicted of a crime, ever having been on probation, and ever entering into a plea bargain. During the same interview, according to Ms. Mitchell and Mr. Beck, when asked why it took so long to complete his education, Dr. Hoxie stated that he had been in jail many times. On August 21, 2002, the DEA issued Dr. Hoxie an order to show cause, proposing that the DEA revoke his certificate of registration because: (1) he materially falsified his applications, and (2) he had committed acts which rendered his continued registration inconsistent with the public interest. In a letter to the DEA dated September 15, 2002, Dr. Hoxie reiterated his denials of past legal trouble. Dr. Hoxie requested an administrative hearing on the order to show cause, and the hearing was held in August of 2003.

At the hearing, the DEA presented three witnesses. Mr. Cokeley testified that he had searched law enforcement databases using Dr. Hoxie's name, date of birth and social security number. The search yielded the arrest reports described above, which were introduced into evidence over Dr. Hoxie's objection that the arrest reports were inadmissible hearsay. Regarding the August 1983 arrest, Mr. Cokeley testified that the custodian of records of the California Department of Justice had clarified the arrest report. According to Mr. Cokeley's conversation with the California official, Dr. Hoxie entered a plea of nolo contendere to a misdemeanor controlled substance violation and a misdemeanor violation of the vehicle code, and received a suspended 90-day jail

sentence and three years' probation.  Mr. Peck and Ms. Mitchell both testified to the denials that Dr. Hoxie made during their interview.  Both further testified that a criminal background check of Dr. Hoxie revealed arrests and convictions in California.  Neither Mr. Beck nor Ms. Mitchell was specific as to the charges Dr. Hoxie was convicted of in California.

Dr. Hoxie cross-examined the DEA's three witnesses but presented no evidence in his defense.  On cross-examination, Mr. Cokeley admitted that he had no knowledge of how the arrest records were maintained, that the records were not court disposition records, and that he had not contacted the police departments involved in Dr. Hoxie's arrests.  Ms. Mitchell testified on cross-examination that she had not located any court record that serves as a record of conviction of Dr. Hoxie for a controlled substance act violation.

Based on the information adduced at the hearing, the ALJ determined that the DEA established by a preponderance of the evidence that Dr. Hoxie had been convicted of a controlled substance violation in November of 1983.  The ALJ concluded that the August 1983 arrest report and related documents were sufficient to establish that Dr. Hoxie pled nolo contendere to a controlled substance violation.   The ALJ further noted that Dr. Hoxie made no attempt to explain his actions by testifying and offered no evidence in mitigation.  The ALJ concluded that Dr. Hoxie materially falsified his applications for a DEA certificate of registration.  The ALJ recommended revoking Dr. Hoxie's DEA certificate based on the material falsification of his application.  The ALJ also determined that Dr. Hoxie's actions rendered his continued registration inconsistent with the public interest.  The ALJ found that the arrest records demonstrated that Dr. Hoxie repeatedly violated California controlled substance law.  Further, the ALJ considered Dr. Hoxie's dishonesty with Ms. Mitchell during the investigation and his failure to take responsibility for his past misconduct to be other conduct that may threaten the public health and safety.  Therefore, the ALJ concluded that the public interest was served by revoking Dr. Hoxie's DEA certificate.

The Deputy Administrator of the DEA, in her final order, considered the record in its entirety and adopted in full the ALJ's decision.  69 Fed. Reg. 51,477 (Aug. 19, 2004).  Based on the August 1983 arrest report and related documents, the Deputy Administrator concluded that Dr. Hoxie materially falsified his applications for a certificate of registration.  The Deputy Administrator therefore revoked Dr. Hoxie's DEA registration because he had materially falsified his applications.  The Deputy Administrator also concluded that Dr. Hoxie's registration was inconsistent with the public interest because of: (1) his violations of California law and past substance abuse, as evidenced by the arrest records; (2) his dishonesty in denying he had ever been arrested during the investigation; and (3) his failure to testify at the hearing.  The Deputy Administrator  revoked Dr. Hoxie's DEA certificate because his lack of candor and forthrightness rendered his continued registration inconsistent with the public interest.  Dr. Hoxie now petitions this court for review of the DEA's decision to revoke his certificate of registration.

II.

Contrary to Dr. Hoxie's primary argument on appeal, the August 7, 1983, arrest report and related documents indicating that Dr. Hoxie pled "nolo" to two charges are sufficient to prove by a preponderance of the evidence that Dr. Hoxie was convicted of a controlled substance violation.  Therefore, the DEA's decision to revoke Dr. Hoxie's certificate of registration because he made a material misrepresentation in his application is supported by substantial evidence.  The August 1983 arrest report and related documents, in addition to the testimony regarding the meaning of those documents and Dr. Hoxie's silence, are substantial evidence that supports the DEA's conclusion that Dr. Hoxie made a material misrepresentation in his applications for a certificate of registration.  The DEA's further determination that Dr. Hoxie's actions rendered his continued registration inconsistent with the public interest is also supported by substantial evidence.  Based on these

factual findings, the DEA's decision to revoke Dr. Hoxie's certificate of registration was not arbitrary, capricious or an abuse of discretion. Therefore, Dr. Hoxie's petition for review is denied.

Under the Controlled Substances Act, physicians who dispense prescription medications that are controlled substances are required to obtain proper registration from the Attorney General. 21 U.S.C. § 822(a)(2) (2000). The authority to deny, revoke or suspend a physician's certificate of registration has been delegated to the Administrator of the DEA, and re-delegated to the Deputy Administrator. *See* 28 C.F.R. §§ 0.100(b), 0.104 & App. § 12 (2004). A physician's certificate of registration to dispense controlled substances may be suspended or revoked if the physician "has materially falsified any application filed" with the DEA or "has committed such acts as would render his registration . . . inconsistent with the public interest." 21 U.S.C. § 824(a)(1) & (4) (2000). The Deputy Administrator considers the following factors in determining the public interest:

(1)     The recommendation of the appropriate State licensing board or professional disciplinary authority.

(2)     The applicant's experience in dispensing, or conducting research with respect to controlled substances.

(3)     The applicant's conviction record under Federal or State laws relating to the manufacture, distribution, or dispensing of controlled substances.

(4)     Compliance with applicable State, Federal, or local laws relating to controlled substances.

(5)     Such other conduct which may threaten the public health and safety.

21 U.S.C. § 823(f) (2000). The Deputy Administrator is not required to make findings as to all of the factors, and can give each factor the weight she determines is appropriate. *Morall v. DEA*, 412 F.3d 165, 173-74 (D.C. Cir. 2005).

The factual findings of the Deputy Administrator are conclusive if supported by substantial evidence. 21 U.S.C. § 877. "Substantial evidence 'means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred. Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established.'" *Morall*, 412 F.3d at 176 (quoting *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 299-300 (1939)). With regard to review of the exercise of discretion by the Deputy Administrator, as opposed to her factfinding, the Administrative Procedure Act provides the applicable standard in the absence of a more specific standard in the Controlled Substances Act. Therefore, the Deputy Administrator's revocation of Dr. Hoxie's DEA certificate will be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(a)(2). The Deputy Administrator must "examine the relevant data" and the record must reflect "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations and internal quotation marks omitted).

The Deputy Administrator's determination that Dr. Hoxie materially falsified his applications for a certificate of registration is supported by substantial evidence. The arrest records indicate that Dr. Hoxie pled nolo contendere to being under the influence of PCP, a disposition confirmed by documents from the California probation department and a records custodian in the California Department of Justice. Dr. Hoxie argues that the arrest records are hearsay and possibly inaccurate. However, hearsay can provide substantial evidence for an agency's factual determinations. *See Richardson v. Perales*, 402 U.S. 389, 402 (1971). Further, Dr. Hoxie failed to dispute the accuracy of the records through contradictory evidence, such as his own testimony. Taken together, the arrest

records and associated documents, the testimony regarding the meaning of those documents, and the failure of Dr. Hoxie to dispute the disposition of the charges indicated by the documents constitute "relevant evidence that a reasonable mind might accept as adequate to support [the] conclusion" that Dr. Hoxie materially falsified his application for a certificate of registration. *Id.* at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Deputy Administrator's determination that Dr. Hoxie's actions rendered his continued registration inconsistent with the public interest is also supported by substantial evidence. The arrest records, while hearsay, are sufficient to demonstrate that Dr. Hoxie failed to comply with California controlled substances law. Dr. Hoxie's refusal to testify at the hearing, refusal to offer any explanation of his past trouble with the law, and his denials of past legal trouble, which are contradicted by the arrest records, provide substantial evidence of other conduct threatening the public health and safety. Candor during DEA investigations, regardless of the severity of the violations alleged, is considered by the DEA to be an important factor when assessing whether a physician's registration is consistent with the public interest. *See Morall*, 412 F.3d at 182-83 (discussing several DEA decisions to continue registrations where physician cooperated with DEA investigators); *Vincent D. Scolaro, D.O., Grant of Restricted Registration*, 67 Fed. Reg. 42,060 (Jun. 20, 2002) (granting registration as consistent with the public interest despite recent substance abuse and felony convictions based in part on physician's acceptance of responsibility). Dr. Hoxie's lack of candor and failure to take responsibility for his past legal troubles, evidenced by his arrest records, his denials to DEA investigators, and failure to testify, provide substantial evidence that his registration is inconsistent with the public interest.

Dr. Hoxie argues that the negative inference drawn from his failure to testify is "fundamentally unfair." This contention lacks merit. The Supreme Court has held that a negative inference can be drawn from a failure to testify in civil proceedings, and that drawing such an inference violates neither the Fifth Amendment nor Due Process. *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976). The Supreme Court has also commented in other contexts that silence can be evidence of a negative inference. In *United States v. Hale*, 422 U.S. 171, 176 (1975), the Court noted that "[s]ilence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation." And the Supreme Court has repeatedly explained in the immigration context that "[s]ilence is often evidence of the most persuasive character. . . . [There] is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak." *INS. v. Lopez-Mendoza*, 468 U.S. 1032, 1043-44 (1984) (quoting *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923)). In the particular context of an administrative hearing, an agency adjudicator's reliance on silence as evidence has been upheld. *See Anderson v. Dep't of Transp.*, 827 F.2d 1564, 1572-73 (Fed. Cir. 1987). Therefore, Dr. Hoxie's silence was evidence on which the DEA could rely to conclude that Dr. Hoxie materially falsified his application and that his actions rendered his continued registration inconsistent with the public interest.

The DEA's decision to revoke Dr. Hoxie's certificate of registration, based on his material falsification of his application and on his other actions, was not arbitrary, capricious or an abuse of discretion. The DEA properly considers the candor of the physician and his forthrightness in assisting in the investigation and admitting fault important factors in determining whether the physician's registration should be revoked. *Barry H. Brooks, M.D., Continuation of Registration*, 66 Fed. Reg. 18,305, 18,309 (Apr. 6, 2001) (despite grounds to revoke registration as inconsistent with the public interest, registration continued because physician "readily admitted fault, [took] responsibility for his past misconduct, and . . . fully cooperated with and assisted in the investigations concerning his illicit activities"). Dr. Hoxie's sanction was neither "unwarranted in law" nor "without justification in fact." *See Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185 (1973); *Pearce v. United States Dep't of Justice*, 867 F.2d 253, 256 (6th Cir. 1988). The DEA's

decision to revoke Dr. Hoxie's registration was consistent with the DEA's view of the importance of physician candor and cooperation.

### III.

Based on the foregoing, the petition for review is DENIED.