# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-60832
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

September 25, 2015

Lyle W. Cayce
Clerk

MICHAEL A. WHITE, Medical Doctor,

Petitioner

v.

DRUG ENFORCEMENT ADMINISTRATION,

Respondent

On Petition for Review of an Order
of the Drug Enforcement Administration
DEA No. 13-16

Before HIGGINBOTHAM, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Dr. Michael White petitions for review of a Drug Enforcement Administration ("DEA") decision to revoke his certificate of registration authorizing him to dispense controlled substances in his medical practice. We DENY the petition.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60832

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, the Mississippi State Board of Medical Licensure (the "Medical Board") instituted disciplinary proceedings against petitioner Dr. Michael White. The Medical Board acted after a DEA investigation exposed misconduct related to White's medical weight-loss practice. Evidence from the investigation revealed, among other things, that White prescribed phentermine, a schedule IV controlled substance, to multiple patients without performing a thorough physical examination, documenting properly their medical history, and verifying that they had made efforts to lose weight without the aid of controlled substances. Several of the patients were not obese or overweight when White authorized use of phentermine; some gained weight during treatment, but White never discontinued their use.

The Medical Board decided that White failed to comply with its rules and regulations as well as applicable state statutes governing the prescription and dispensing of the medication. It imposed a stayed six-month suspension of White's medical license in January 2012.[1] Additionally, the Medical Board permanently barred him from practicing or prescribing controlled substances in the area of weight loss. The Medical Board also required White to attend continuing medical education courses. He failed to timely complete the courses, which prompted a second hearing before the Medical Board.

In March 2012, following the Medical Board's decision, White voluntarily surrendered his DEA certificate of registration. Several days later, he applied for a new certificate. The DEA Deputy Assistant Administrator issued an order to show cause why White's application should not be denied because registration would be inconsistent with the public interest under 21 U.S.C.

---

[1] White also faced federal criminal charges for "knowingly and intentionally dispensing and distributing phentermine . . . without a legitimate medical purpose and outside the usual course of medical practice." A jury acquitted him on all charges in October 2012.

No. 14-60832

§§ 823(f) and 824(a)(4). White was granted a hearing. The DEA called three witnesses including an investigator who participated in the investigation of White's practice, the executive director of the Medical Board, and a medical expert in weight loss and bariatrics. White also testified. Documents were introduced into evidence.

The administrative law judge ("ALJ") found, among other deficiencies, that White failed to conduct an examination or document the medical history of the patients to whom he prescribed phentermine. Thus, he had not established a *bona fide* doctor-patient relationship with them, and had thereby violated multiple statutes and regulations. The ALJ also said that White failed to submit mitigating evidence showing he could be trusted with a new certificate. Although at the hearing White admitted he engaged in some misconduct, the ALJ found he denied that his underlying actions were improper, blamed subordinates, criticized applicable laws and regulations, was angry at the Medical Board for disciplining him, and attributed the initial investigation to being unfairly targeted by the DEA.

In the final agency decision on White's application, the DEA Deputy Administrator adopted the ALJ's findings of fact, conclusions of law, and recommendation, explaining that there was "more than ample evidence to support the conclusion that [White] poses a potential danger to the public." White petitions for review of the decision.

DISCUSSION

In reviewing the denial of an application, deference is given to the Deputy Administrator's exercise of discretion. *See Noell v. Bensinger*, 586 F.2d 554, 558 (5th Cir. 1978). An agency decision will only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law."

No. 14-60832

*See Williams v. Admin. Review Bd.*, 376 F.3d 471, 475 (5th Cir. 2004) (citation and quotation marks omitted). Factual findings are sustained if they are supported by substantial evidence, which is "more than a mere scintilla but less than a preponderance." *Id.* at 476.

The Controlled Substances Act created a "regulatory system making it unlawful to . . . dispense . . . any controlled substance" unless authorized by the statute. *Gonzales v. Raich*, 545 U.S. 1, 13 (2005). Persons in the lawful distribution chain must be registered with the DEA pursuant to 21 U.S.C. § 823. In carrying out its responsibilities related to registration, the DEA Deputy Administrator may deny a practitioner's application for a certificate if issuing it would be inconsistent with the public interest. *Id.* § 824(a)(4). Five factors have bearing on this determination: (1) the recommendation of a state licensing board; (2) "[t]he applicant's experience in dispensing, or conducting research with respect to controlled substances"; (3) the applicant's criminal history related to controlled substances; (4) the applicant's compliance with state, federal, and local laws related to controlled substances; and (5) "other conduct which may threaten the public health and safety." *Id.* § 823(f).

Where the government has established a *prima facie* case that the public interest would be harmed in issuing a certificate, the DEA requires an applicant to submit "mitigating evidence to assure the Administrator that [he] can be entrusted with the responsibilit[ies]" that accompany registration. *See Med. Shoppe—Jonesborough*, 73 Fed. Reg. 364, 387 (Drug Enf't Admin. Jan. 2, 2008) (citation and quotation marks omitted). Such evidence includes acceptance of responsibility and a demonstration that the applicant "will not engage in future misconduct." *Id.*; *see also, e.g., Hoxie v. Drug Enf't Admin.*, 419 F.3d 477, 482–83 (6th Cir. 2005); *MacKay v. Drug Enf't Admin.*, 664 F.3d 808, 820–21 (10th Cir. 2011) (finding that an applicant's self-reproach may

4

No. 14-60832

indicate whether he will transgress again, a "consideration . . . vital to whether . . . registration is in the public interest").

White's only argument now is that the Deputy Administrator erred in determining that White failed to accept responsibility for his actions.   White asserts that his decision to end his weight-loss practice prior to the Medical Board's ruling, voluntary surrender of his DEA certificate, admitting he made "mistakes" in his practice, and accepting professional discipline demonstrates he acknowledges and regrets his misconduct.  White argues his failure to "give a lachrymose true confession[] or lie prostrate" during the hearing on the show cause order, and his displeasure about the Medical Board proceedings and at being allegedly singled out by the DEA, does not undermine the sincerity of his promise to avoid future missteps.  We disagree.

As an initial matter, the government has established a *prima facie* case. Consistent with the purposes of the Controlled Substances Act, the DEA requires that prescriptions be issued for "legitimate medical purpose[s] by a[] . . . practitioner acting in the usual course of his professional practice."  21 C.F.R. § 1306.04(a).  Here, the DEA investigation, the disciplinary action rendered by the Medical Board, the medical expert who testified at the hearing on the show cause order, and even some of White's testimony at the hearing, indicate that White repeatedly prescribed phentermine to individuals with whom he did not have a *bona fide* doctor-patient relationship, who were not obese, and who had not demonstrated an attempt to lose weight without the aid of controlled substances.  Thus, there is substantial evidence supporting the conclusion that White's experience in dispensing controlled substances and his history of compliance with applicable laws, the second and fourth statutory "public interest" factors, weigh against granting a new certificate of registration.  *See* 21 U.S.C. § 823(f).

5

No. 14-60832

As for mitigating evidence, during the hearing on the show cause order, White testified that he voluntarily quit his weight loss practice and now realizes that phentermine is "dangerous[.]"  Even when White was apologetic, however, he often equivocated and deflected blame. For example, White minimized his prescription of "diet pill[s]" as compared to other weight loss solutions like plastic surgery, emphasized that none of his patients have suffered injuries as a result of his actions, denied prescribing phentermine without "medical justification," and indicated that the nurse practitioners with whom he worked were responsible for the subpar physical examinations and medical history documentation.  He also testified that the DEA unfairly targeted him even though his practice was in line with other physicians' practices.  In weighing whether White adequately demonstrated acceptance of responsibility, the Deputy Administrator properly considered all of this evidence. There is substantial support for the determination that White fell short in showing that he could be trusted with a new certificate. The agency's decision was not arbitrary.

The petition for review is DENIED.