NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0253n.06

Case No. 23-5325

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 10, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| AMANDA HOSKINS; JONATHAN TAYLOR, | ) ) ) | |
| Plaintiffs-Appellants, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| JASON YORK, Kentucky State Police Officer, Individually; MARK MEFFORD, Kentucky State Police Officer, Individually; JACKIE PICKRELL JOSEPH, Kentucky State Police Officer, Individually, | ) ) ) ) ) ) | OPINION |
| Defendants-Appellees. | ) ) | |

Before: SUTTON, Chief Judge; CLAY and BUSH, Circuit Judges.

SUTTON, Chief Judge. Amanda Hoskins and Jonathan Taylor sued Detective Jason York for malicious prosecution premised on the fabrication of evidence. After an eight-day trial, the jury ruled for York. Finding no reversible errors in the district court's management of this complex case, we affirm.

I.

On December 20, 2010, a UPS driver discovered Katherine Mills dead in her home in the Stinking Creek area of Knox County, Kentucky. The Kentucky state police assigned the case to Detective Jason York. It was his first murder investigation as the lead detective. After surveying

the crime scene and finding Mills' purse largely empty, York hypothesized that the murderer killed her for money. An eyewitness reported that he had seen a white male with tattooed hands and a hooded camouflage coat walking from the rear of the house toward the street, where a blue car sat parked.

Detective York focused on Mills' former son in-law, William Lester, who had joked about restraining Mills and stealing her money. York believed Amanda Hoskins, Lester's sometimes girlfriend, could confirm Lester's involvement. But Hoskins did not give York any productive information along these lines. York also learned that Lester spoke with Hoskins' cousin, Jonathan Taylor, on the day of the murder. But Taylor denied any involvement.

York's interest in Lester, Hoskins, and Taylor intensified in early 2012, when several witnesses claimed to have information linking them to Mills' murder. York presented this information and other evidence uncovered in the investigation to a grand jury, which returned an indictment against all three individuals. Kentucky placed the three suspects in pretrial detention.

As the trial date neared, several witnesses recanted their claims. Although other witnesses stuck to their statements, the prosecutor concluded that a reasonable juror could not find Hoskins, Taylor, or Lester guilty of murder on the remaining evidence. The prosecutor dropped the charges in the summer of 2016.

Hoskins and Taylor sued Detective York in federal court under § 1983 for malicious prosecution against them. The district court determined that material disputes of fact precluded summary judgment and allowed the claim to proceed to trial.

Less than two weeks before York's trial date, Hoskins and Taylor learned something new. In May 2017, the Kentucky state police matched a fingerprint on hundred-dollar bills found at the murder scene to a previously unknown suspect, John Whitehead. But when the police turned over

the files of York's investigation to Hoskins and Taylor during civil discovery, this positive match was missing. All of this prompted the claimants to suspect that Detective York and the other police were not playing it straight. The district court agreed that Hoskins and Taylor could use this evidence to question whether York investigated them in good faith. But it excluded other evidence of the Whitehead investigation as unrelated to the central question of whether probable cause existed to detain Hoskins and Taylor.

Over the course of eight days, the jury heard Detective York and nearly two dozen other witnesses explain their involvement in the investigation and the evidence they did and did not uncover. The jury awarded judgment to York.

## II.

On appeal, Hoskins and Taylor challenge six of the district court's rulings: (1) the dismissal of their separate fabrication-of-evidence count; (2) the jury instructions about Whitehead; (3) the jury instructions about the missing records; (4) the exclusion of York's testimony to the grand jury; (5) the exclusion of evidence of York's investigative techniques in a different case; and (6) the court's decision not to grant a new trial based on police presence in the courtroom.

*Fabrication-of-evidence claim.* In their complaint, Hoskins and Taylor alleged that York maliciously prosecuted them by fabricating evidence against them. The court found that the two theories—malicious prosecution and fabrication of evidence—overlapped and permitted only the malicious prosecution claim to proceed to trial.

Federal law prohibits the police and other state actors from causing the "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. When faced

with claims under § 1983, we look behind the labels to identify the "appropriate constitutional guarantee" at issue. *Gregory v. City of Louisville*, 444 F.3d 725, 750 (6th Cir. 2006).

Police fabrication of evidence may violate any of several federal constitutional guarantees. *See McDonough v. Smith*, 588 U.S. 109, 115 n.2 (2019). Two potential theories matter here. One turns on the Fourth Amendment's guarantee against unreasonable seizures, which prevents the government from arresting or detaining individuals without probable cause that they committed an offense. *See District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). A grand jury indictment establishes a presumption that probable cause exists to conclude that the defendant committed a crime. *King v. Harwood*, 852 F.3d 568, 589 (6th Cir. 2017). But if the police knowingly or intentionally fabricated the evidence that misled the grand jury into finding probable cause, they would remain liable. *See id.* at 589–90.

Another theory turns on the right to due process of the Fourteenth Amendment. *See Jackson v. City of Cleveland*, 925 F.3d 793, 815 (6th Cir. 2019). The government's use of fabricated evidence could deprive a criminal defendant of the Constitution's guarantee to fair trial procedures. *See, e.g.*, *Tanner v. Walters*, 98 F.4th 726, 733 (6th Cir. 2024).

We agree with the district court that Hoskins and Taylor raised a malicious-prosecution claim under the Fourth Amendment. York's investigation led to the deprivation of their liberty for several years. That theory fits the Fourth Amendment "hand in glove." *Manuel v. City of Joliet*, 580 U.S. 357, 364 (2017) (analyzing a claim that false evidence rendered pretrial detention an unreasonable seizure). Because the grand jury's independent determination of probable cause would have shown that York did not unreasonably cause this violation of their rights, Hoskins and Taylor had to prove that York secured the indictment by knowingly using fabricated evidence. *See*

*King*, 852 F.3d at 589. Whether we call the constitutional tort malicious prosecution or fabrication of evidence, the substance of this Fourth Amendment theory remains the same.

We also agree with the district court that Hoskins and Taylor did not preserve any due process claim distinct from this Fourth Amendment claim. Hoskins and Taylor informed the district court that they did not allege "separate due process claims for the interrogation practices used with third-party witnesses." R.204 at 137–38. On this record, the court fairly concluded that Hoskins and Taylor "expressly abandoned any due-process fabrication theory," leaving them with a Fourth Amendment argument alone. R.256 at 46.

Hoskins and Taylor try to refute this conclusion in a few ways. They first argue that they preserved their due-process fabrication claim. We disagree. When York asked the district court to grant summary judgment on both the Fourth and Fourteenth Amendment theories, Hoskins and Taylor responded only to York's Fourth Amendment arguments. Having failed to preserve their due process arguments then, they have forfeited them now. *See Palma v. Johns*, 27 F.4th 419, 429 n.1 (6th Cir. 2022) (noting that response briefs must answer the movant's claims).

Hoskins and Taylor insist that, even if they abandoned their due process claim, they could proceed on a "fabrication theory as a standalone claim." Reply Br. 21 n.5. But when the parties joined the issue below, they did not identify a basis separate from the "deprivation of liberty" theory already covered in their Fourth Amendment claim. R.195 at 124. It is forfeited.

*Whitehead jury instructions.* The district court instructed the jury not to draw any adverse inferences from Whitehead's invocation of the Fifth Amendment right against self-incrimination. No abuse of discretion occurred. *See United States v. Emmons*, 8 F.4th 454, 470 (6th Cir. 2021).

The Fifth Amendment to the federal Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The right

extends not just to criminal defendants but also to a witness in a civil proceeding. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). Because the stakes in a civil trial are lower than they are in a criminal case, a civil jury may draw adverse inferences from a witness' silence, something it may not do in a criminal case. *Baxter v. Palmigiano*, 425 U.S. 308, 318–19 (1976).

The Federal Rules of Evidence give the district court responsibility for determining whether a witness may claim a privilege and on what terms. Fed. R. Evid. 104(a). Evidence Rule 403 permits a court to exclude relevant evidence if other considerations—risks of "unfair prejudice, confusing the issues, [and] misleading the jury"—outweigh its probative value. A court that permits a witness to invoke the Fifth Amendment thus must determine how and under what circumstances the jury hears that evidence.

In this instance, the court permissibly prevented the jury from drawing conclusions about Whitehead's invocation of the Fifth Amendment. It reasoned that this inference possessed a low probative value in showing whether York understood probable cause existed at the time. One fingerprint connected Whitehead to the crime scene, and no evidence showed that York should have known about Whitehead's role prior to 2017. The court expressed reasonable concern that a negative inference against Whitehead "would be quite prejudicial to" York given that the true issue on trial was whether York had suppressed this evidence, not whether Whitehead committed murder. R.415 at 7.

Hoskins and Taylor maintain that, because "jurors *may* draw an adverse inference," a district court errs as a matter of law whenever it instructs "jurors they *may not*." Appellants' Br. 42. But courts have firmly endorsed only the first of those propositions, *see Baxter*, 425 U.S. at 318; *Hoxie v. DEA*, 419 F.3d 477, 483 (6th Cir. 2005), not the second one. The court retained this discretion, and reasonably exercised it.

6

Hoskins and Taylor add that the district court incorrectly weighed the Rule 403 factors. In support, they observe that we once upheld a court's decision to admit similar evidence of after-discovered forensic evidence over charges of prejudice. *See Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014). But that decision rested largely on the principle that circuit judges should not lightly accept invitations to second guess the evidentiary rulings of the judge who had a front-row seat at the trial from start to finish. *See id.*; *see also Stackpole Int'l Engineered Prods., Ltd. v. Angstrom Auto. Grp., LLC*, 52 F.4th 274, 285 (6th Cir. 2022). That admonition applies with considerable force in upholding Judge Weir's decision.

*Kentucky state police evidence.* Hoskins and Taylor challenge the court's exclusion of evidence about the Kentucky state police investigation into Whitehead. In essence, they challenge the court's balancing of the probative value and the risk of prejudice from this evidence under Evidence Rule 403. Here, too, the trial court has considerable discretion. *See United States v. Hazelwood*, 979 F.3d 398, 408 (6th Cir. 2020).

No abuse of that discretion occurred here either. The court kept its eye on the key ball—whether Detective York invented probable cause to charge Hoskins and Taylor with murder, not whether the Kentucky state police dragged their feet in investigating Whitehead or actions of the police long after Kentucky had dropped the charges. The court reasonably found that the evidence, even if relevant, would distract the jury from evaluating whether independent probable cause existed to justify pretrial detention. It thus allowed the jury to consider this evidence as relevant to the credibility of the police witnesses, just not for more than that. That approach fairly accounted for the competing considerations in play.

Hoskins and Taylor challenge that evaluation. They claim unfair prejudice from the court's refusal to order the Kentucky state police to permit additional depositions of York and Whitehead.

But Hoskins and Taylor have not shown why, minutes before the first day of trial, the court abused its discretion by declining to permit additional depositions on matters it had already deemed to have little to no relevance to the litigation. *See* Fed. R. Civ. P. 30(a)(2).

They claim that the court abused its discretion in refusing to take judicial notice of the "chronology" of the missing reports. R.414 at 301. But Evidence Rule 201(b) allows a court to take notice of facts "not subject to reasonable dispute." The court accurately recognized that reasonable disputes remained about "the content of the investigative file, the chronology and sequence of that file, [and] when it came into being." R.414 at 257.

They claim that the court erred by declining to introduce their requests for production of the report. But the court did not abuse its discretion in reasoning that the state police, not Detective York, failed to make the disclosure and that this evidence thus would have confused the jury about who was really on trial: York.

They close this line of argument with the claim that "there should have been consequences" for the Kentucky state police's conduct. Reply Br. 23. The Federal Rules of Civil Procedure agree with that sentiment in theory. *See* Fed. R. Civ. P. 37(c)(1). But Hoskins and Taylor never sought any such sanctions, and we have no warrant to improvise a new form of them here.

*York's grand jury testimony*. The district court excluded evidence of York's grand jury testimony. Grand jury witnesses enjoy absolute immunity from § 1983 claims founded upon their testimony. *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). That absolute immunity contrasts with the qualified immunity that officers may claim for their actions outside of the grand jury room. *King*, 852 F.3d at 584. The court understood the distinction. It did not permit the use of York's testimony before the grand jury to establish a Fourth Amendment violation. But it allowed

Hoskins and Taylor to introduce evidence that York allegedly fabricated statements and evidence before he testified to the grand jury. *See King*, 852 F.3d at 587–88.

Hoskins and Taylor insist that the court should have allowed them to use this testimony for impeachment purposes. But the court explained that, even if the grand jury testimony could be used for impeachment in some limited circumstances, Hoskins and Taylor's litigation strategy ran the risk that the jury would use the evidence to speculate about whether York lied to the grand jury. That, the court correctly understood, is not allowed. *See Rehberg*, 566 U.S. at 369. No abuse of discretion occurred.

*Prior acts evidence.* Hoskins and Taylor challenge the district court's exclusion of a recording of York interrogating a witness in a different case. To admit such "prior acts" evidence under Evidence Rule 404(b), a party must do three things: show that the prior act occurred; show that the evidence does more than merely show an individual's proclivity to act in a certain way; and show that the probative value of the evidence outweighs any risk of unfair prejudice. *Flagg v. City of Detroit*, 715 F.3d 165, 176 (6th Cir. 2013). Abuse-of-discretion review applies to this evidentiary ruling. *Id.* at 175.

Hoskins and Taylor focus on the court's decision to exclude the evidence based on its assessment that the risk of prejudice outweighed any probative value. The court ably handled this issue. It permissibly found that this evidence proved "minimally probative" on the core question of probable cause. R.346 at 13. Because the question of probable cause already required the jury to consider "an eleven-year-old murder," the court likewise permissibly found that introducing evidence from "wholly distinct murder cases" created risks that the jury would draw improper inferences, to say nothing of opening the door to the parade of witnesses called to contextualize those other investigations. *Id.* at 14. There was nothing wayward about this decision.

*Police spectators.* Hoskins and York requested a new trial on the ground that members of the Kentucky state police attended the trial and provided security for it. We evaluate whether "identifiable security guards in the courtroom" create a constitutionally impermissible risk of prejudice by considering all of the circumstances. *Holbrook v. Flynn*, 475 U.S. 560, 569(1986). Abuse-of-discretion review applies. *See United States v. Barger*, 931 F.2d 359, 371 (6th Cir. 1991).

No reasonable risk of prejudice occurred here. The officers explained that they were "here to watch the trial" while dressed in their "normal uniforms." R.416. at 30–31. The officers had just as much right to watch the trial proceedings as any other interested member of the public. *Cf. Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 854 F.2d 900, 902–03 (6th Cir. 1988). Hoskins and Taylor reply that the officers went beyond that spectator role when they loitered outside the courtroom and stood watch over the jury room, but they never brought these concerns to the attention of the district court until after the trial ended. Indeed, when the jury asked for a security escort after announcing its verdict, Hoskins and Taylor accepted the court's explanation that this concern "is not an unheard of sentiment by a jury." R.415 at 176; *see United States v. Daneshvar*, 925 F.3d 766, 786–87 (6th Cir. 2019) (observing that agreement with the court's response to jury questions forfeits an appellate challenge). In this respect and all of the others, the court did not abuse its discretion in carefully managing this complex trial.

We affirm.