NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0042n.06

No. 24-3245

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 28, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| TOLER'S CREEK ENERGY, INC., | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE BENEFITS |
| | ) | REVIEW BOARD |
| DIRECTOR, OFFICE OF WORKERS' | ) | |
| COMPENSATION PROGRAMS, U.S. | ) | OPINION |
| DEPARTMENT OF LABOR, et al., | ) | |
| Respondents. | ) | |
| | ) | |

---

BEFORE: COLE, WHITE, and MATHIS, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Petitioner Toler's Creek Energy, Inc. (Toler's Creek) petitions this court to review the Benefits Review Board's (the Board) decision affirming an administrative law judge's award of benefits under the Black Lung Benefits Act (BLBA). We DENY the petition.

**I.**

In August 2017, claimant Harold G. Howell (Howell) filed a claim under the Black Lung Benefits Act, 30 U.S.C. §§ 901-944. The district director issued a proposed decision and order awarding benefits and, after Toler's Creek appealed, referred the claim to the Office of Administrative Law Judges (OALJ). In February 2020, an Administrative Law Judge (ALJ) issued a decision and order remanding the claim to the district director. The district director referred Howell's case to the OALJ a second time, and it was assigned to ALJ Joseph E. Kane.

**A.**

ALJ Kane was presented with inconsistent evidence of Howell's smoking history, with one doctor recording up to two packs of cigarettes per day for forty-two years, another doctor recording one-half to one pack of cigarettes per day for forty-five years, and treatment records showing three packs per day for forty years. ALJ Kane determined that Howell smoked between 22.5 and 120 pack-years.[1] He also found that Howell worked as a coal miner for 10.22 years and that Howell had a total pulmonary disability and legal pneumoconiosis, defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment." (JA 175-82).

In determining that Howell had legal pneumoconiosis, ALJ Kane considered the opinions of three medical doctors. Dr. Michael Green diagnosed Howell with severe hypoxemia and chronic obstructive pulmonary disease (COPD). He concluded that both smoking and coal-mine dust caused these illnesses:

> This gentleman has a 42 year history of cigarette smoking up to 2 packs per day. This gentleman has a 9.5 year occupational history of exposure to respirable coal and rock dust. The 42 year history of cigarette smoking up to 2 packs-per-day is a significant factor in the consideration of chronic obstructive pulmonary disease. One cannot eliminate the 9.5 year occupational history of exposure to respirable coal and rock dust as contributing at least in part to the findings of this gentleman's significant and severe chronic airflow obstruction. This gentleman's chronic airways disease is very severe. Even the lesser contribution from this gentleman's occupational history would be a significant consideration given the severe degree of this gentleman's overall airflow obstruction. I cannot eliminate this gentleman's 9.5 year occupational history of exposure to respirable coal and rock dust as contributing at least in part to this gentleman's severe chronic airflow obstruction and his total pulmonary disability and significant findings of hypoxemia as a result.

(*Id.* at 13). ALJ Kane found that Dr. Green's opinion was "well-reasoned, well-documented, and entitled to probative weight." (*Id.* at 179).

---

[1] Pack-years are "calculated by multiplying the number of packs of cigarettes smoked per day by the total number of years an individual smoked." *Huscoal, Inc. v. Dir., Off. of Workers' Comp. Programs*, 48 F.4th 480, 486 (6th Cir. 2022).

Dr. Abdul Dahhan diagnosed Howell with an obstructive ventilatory impairment, but he concluded that Howell's coal-mine exposure was insufficient to cause this condition given the length of his coal-mine employment and the fact that his coal-mine-dust exposure ceased in 1993. He thus determined that Howell's smoking, rather than his coal-mine-dust exposure, caused his obstructive ventilatory impairment. ALJ Kane concluded that these statements were unpersuasive because Howell did not need to show that his illness was entirely attributable to coal-mine-dust exposure in order to establish legal pneumoconiosis. He noted that the preamble to the relevant regulations explains that "COPD caused by coal dust exposure is legal pneumoconiosis, which, by its nature, is latent and progressive"—meaning that some amount of exposure many years ago could have partially caused Howell's illness. (*Id.* at 180); *see* 65 Fed. Reg. 79970 (Dec. 20, 2000) (discussing how research findings have shown that some former coal miners developed pneumoconiosis years after leaving the mining industry). As a result, ALJ Kane gave Dr. Dahhan's opinion little probative weight.

Dr. Thomas Jarboe diagnosed Howell with a severe obstruction caused by cigarette smoking and asthma. He stated that coal-mine-dust exposure does not cause reversible airway disease, which Howell had, but rather causes a fixed impairment. He also opined that the most compelling evidence that Howell's illness was caused by smoking, rather than coal-mine-dust exposure, was the disparity between his heavy smoking history and his relatively minimal coal-mine-dust exposure. He stated that there was less than a two percent chance that the amount of coal-mine-dust exposure Howell experienced would cause an impairment as severe as Howell's. ALJ Kane concluded that Dr. Jarboe's opinion was contrary to the Department of Labor's finding that the effects of smoking and coal-mine-dust exposure are additive causes of respiratory illnesses. He also noted that the Board has held that an ALJ may discount opinions focused on

statistics rather than the claimant's specific condition. Additionally, he explained that although Dr. Jarboe determined that Howell's impairment was reversible due to changes in pulmonary function test results from December 2017 to September 2018, both of those tests showed impairment. As a result, he gave Dr. Jarboe's opinion little probative weight.

Although ALJ Kane found legal pneumoconiosis, he determined that the evidence failed to establish clinical pneumoconiosis, defined as "the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." (JA 175, 177). He explained that x-ray evidence failed to establish clinical pneumoconiosis because the designated x-rays were inconclusive as to pneumoconiosis, and the treatment records lacked a radiologist's opinion on the presence or absence of pneumoconiosis. He discounted Dr. Green's opinion that Howell had clinical pneumoconiosis because Dr. Green based this opinion on another doctor's reading of one of Howell's x-rays but did not review any of the other x-rays of record, which ALJ Kane found were inconclusive as to pneumoconiosis. ALJ Kane also noted that his conclusion that the x-ray evidence did not establish clinical pneumoconiosis aligned with Dr. Jarboe's opinion that the x-ray evidence was equivocal. Dr. Dahhan did not provide an opinion on whether Howell had clinical pneumoconiosis.

Having found that Howell had legal pneumoconiosis and that his coal-mine employment was a contributing cause of it, ALJ Kane determined that Howell was entitled to benefits under the BLBA.

**B.**

On appeal before the Board, Toler's Creek argued that ALJ Kane erred in determining Howell's smoking history and finding that he established legal pneumoconiosis. Toler's Creek

first argued that ALJ Kane erred in weighing the doctors' opinions. The Board, however, found that ALJ Kane permissibly discredited Dr. Dahhan's opinion because Dr. Dahhan failed to explain why both coal-mine dust and smoking could not have caused Howell's illness. It further found that ALJ Kane permissibly discredited Dr. Jarboe's opinion because Dr. Jarboe failed to address the fact that Howell's pulmonary-function studies suggested a fixed component to his impairment. And Dr. Jarboe failed to explain how coal-mine dust could not have contributed to Howell's impairment in addition to smoking. Toler's Creek also argued that the ALJ applied the regulations' preamble as a binding regulatory rule or used it to create new agency rules or regulations. The Board disagreed, explaining that ALJ Kane "found [Dr. Dahhan and Dr. Jarboe's] opinions inadequately explained for several reasons and in so doing permissibly consulted the preamble as a statement of medical research findings accepted by the Department of Labor." (*Id.* at 192).

The Board ultimately affirmed ALJ Kane's conclusion that Howell had legal pneumoconiosis, finding that it was supported by substantial evidence, and affirmed the award of benefits. This petition for review followed.

## II.

This court reviews the Board's legal conclusions de novo. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068 (6th Cir. 2013). In so doing, it corrects errors of law and determines whether the ALJ's decision was supported by substantial evidence. *Cumberland River Coal Co. v. Banks*, 690 F.3d 477, 482 (6th Cir. 2012). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Peabody Coal Co. v. Groves*, 277 F.3d 829, 833 (6th Cir. 2002) (quoting *Cross Mountain Coal, Inc. v. Ward*, 93 F.3d 211, 216 (6th Cir. 1996)). It is "more than a scintilla" and must create more than just "a suspicion of the existence of the fact to be established." *Hoxie v. Drug Enf't Admin.*, 419 F.3d 477, 482 (6th Cir. 2005).

**A.**

Toler's Creek first argues that ALJ Kane erred in finding that the evidence proved legal pneumonoconiosis. Specifically, Toler's Creek takes issue with ALJ Kane's reliance on the Preamble's statement that "COPD caused by coal dust exposure is legal pneumoconiosis, which, by its nature, is latent and progressive." (JA 180 (citing 65 Fed. Reg. 79,920, 79,939 (Dec. 20, 2000); 20 C.F.R. § 718.201)). Toler's Creek asserts that in relying on this statement to discount Dr. Dahhan's conclusion that Howell's coal-mine-dust exposure was too minimal to cause his impairment, ALJ Kane "improperly use[d] the Preamble to create new agency rules or regulations," including:

1. Effects of smoking and coal dust are always additive;
2. Medical opinions focused on generalities or statistics, rather than miner's specific condition, are always less reliable and contrary to the agency position in the preamble;
3. There remained a "qualifying" obstruction to airflow and that a physician must eliminate the "finding of legal pneumoconiosis"; and
4. Physicians that do not find contribution from coal dust "ignored" the exposure.

(Petitioner's Br. 9). But ALJ Kane did not treat the Preamble as a binding rule or regulation, nor did he use it to create new agency rules or regulations. Rather, he "simply looked to the preamble, in addition to the applicable regulations, to assess [the doctors'] credibility." *A & E Coal Co. v. Adams*, 694 F.3d 798, 801-02 (6th Cir. 2012). This court has determined that using the Preamble in this way is permissible. *Id.*; *see also Wilgar Land Co. v. Dir., Off. of Workers' Comp. Programs*, 85 F.4th 828, 838 (6th Cir. 2023). Accordingly, ALJ Kane's reliance on the preamble does not necessitate a finding that the Board erred in upholding his decision.

Toler's Creek also asserts that Dr. Green did not adequately explain why Howell's coal-mine-dust exposure could not be eliminated as a factor in causing his illness. To the contrary, Dr. Green explained that his conclusion was based on the severity of Howell's illness: "[Howell]'s

chronic airways disease is very severe. Even the lesser contribution from this gentleman's occupational history would be a significant consideration given the severe degree of this gentleman's overall airflow obstruction." (JA 13). Dr. Green's explanation was not inadequate and does not compel a finding that the Board's decision was erroneous.

Finally, Toler's Creek contends that ALJ Kane did not address how Dr. Green's finding of clinical pneumoconiosis, which ALJ Kane rejected, affected his finding of legal pneumoconiosis, with which ALJ Kane agreed. But the Board's failure to address this gap in ALJ Kane's analysis does not require us to conclude that its decision was erroneous. Indeed, the question is whether ALJ Kane's conclusion was supported by substantial evidence. *See Cumberland River Coal Co.*, 690 F.3d at 482. And because the severity of Howell's illness supported a finding that his coal-mine-dust exposure contributed to it, substantial evidence supported ALJ Kane's finding of legal pneumoconiosis.

**B.**

Toler's Creek also asserts that we must remand Howell's claim because the conflicting reports on Howell's smoking history resulted in an excessively broad pack-year calculation of 22.5 to 120 pack-years. In support of its argument, Toler's Creek cites *Grayson Coal & Stone Co., Inc. v. Teague*, 688 F. App'x 331, 335-36 (6th Cir. 2017), in which this court concluded that the ALJ was not required to make a more specific finding regarding the claimant's smoking history when conflicting reports resulted in a calculation of 10 to 12.5 pack-years. *Id.* at 336. To be sure, the pack-years range in this case is much wider than that in *Grayson Coal*, but nothing in ALJ Kane's opinion suggests that his conclusions about whether coal-mine-dust exposure partially caused Howell's illness would differ based on where Howell's smoking history fell within that range. Indeed, the fact that ALJ Kane described Howell's smoking history as "significant to very

significant" (JA 168) suggests that calculations of 22.5 pack-years and 120 pack-years would have yielded similar conclusions as to the causes of Howell's illness.

Toler's Creek also contends that ALJ Kane "attached his own medical finding" concerning this range by finding that it was "significant to very significant." (Petitioner's Br., 29-30 (quoting JA 168)). But ALJ Kane was permitted to draw a general conclusion as to how substantial Howell's smoking history was, and this conclusion does not constitute an improper medical finding. Toler's Creek further asserts that ALJ Kane ignored additional evidence regarding Howell's smoking history, including Dr. Jarboe's finding of a 120 pack-year history; Dr. Jarboe's statement that smokers tend to underestimate the length of their smoking history; and the fact that, although Howell claimed he stopped smoking in 2015 or 2016, blood tests showed exposure to smoke in 2017 and 2018. But ALJ Kane relied on Dr. Green and Dr. Dahhan's records of Howell's smoking history, as well as Howell's treatment records, in calculating the pack-years range. Additionally, ALJ Kane's pack-years range includes Dr. Jarboe's higher estimate of 120 pack-years. Therefore, ALJ Kane's analysis regarding Howell's smoking history is supported by substantial evidence, as is the Board's decision upholding his conclusion.

## III.

For the reasons set out above, we deny the petition for review.